# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **TERRY WYNN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:11–cv–0025** |
| | ) | |
| **vs.** | ) | **Sharp / Brown** |
| | ) | |
| **OFFICER CHAD ESTES,in his** | ) | |
| **individual and official capacities,** | ) | **Jury Demand** |
| | ) | |
| **Defendant.** | ) | **ORAL ARGUMENT REQUESTED** |

---

## TERRY WYNN, M.D.'S RESPONSE TO CITY OF PULASKI'S MOTION FOR ATTORNEYS' FEES

---

COMES NOW, the Plaintiff, Terry Wynn, M.D. ("Dr. Wynn"), by and through the undersigned, pursuant to Fed. R. Civ. P. 54 and LR 54.01(b), and responds to the *City of Pulaski's Motion for Attorneys' Fees* (D.E. No. 182), filed by Defendant City of Pulaski ("City" or "Pulaski"), as follows:

The City's *Motion* should be denied. Dr. Wynn's claims against the City, and her continued litigation of them through the summary judgment phase, were not egregious or excessive cases of misconduct, and cannot have been, therefore, frivolous, unreasonable or without foundation. The City relies upon inadmissible evidence in support of its *Motion*; fails to accurately identify the facts revealed during discovery conducted in the above-referenced case; misapplies the law (i.e. that a prevailing 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") defendant is not entitled to attorneys' fees simply because a plaintiff loses her case, and that such attorneys' fees are an "extreme sanction" available only upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation); ignores tactical and strategic decisions

1

necessitated by statements and implications from counsel for the City's co-Defendant, Officer Chad Estates ("Officer Estes"); seeks an unreasonable, excessive, unwarranted and unjust amount of attorneys' fees given the experience of City's counsel in § 1983 municipal defense cases in this District; insufficiently documents the City's purported attorneys' fees; and prematurely seeks attorneys' fees when the remaining parties, Dr. Wynn and Officer Estes, have yet to try their case and attorneys' fees have not been assessed therein following the rendering of a verdict by the jury.

## BACKGROUND[1]

### A.      Pleadings and Discovery.

The City first summarizes the length and contents of Dr. Wynn's *Complaint* (D.E. No. 1) filed in this case.  For example, the City complains that Dr. Wynn's *Complaint* "was 25 pages long," "comprised of eleven different counts set out over one hundred and forty-two separately numbered paragraphs prior to the 'Prayer for Relief,'" "contain[s] every conceivable theory of [liability]," contains "four separate counts against the City," and "made unfounded allegations" against the City.  (Mot. Attys.' Fees, pp. 1-3, D.E. No. 183.)  This information is utterly irrelevant.  As the Court is no doubt aware, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and its progeny mandate that a federal plaintiff asserting Section 1983 claims comply with the elevated pleading standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Without reference to caselaw, it would be acknowledged by all modern practitioners that avoiding dismissal under Fed. R. Civ. P. 12(b) requires detailed allegations of actionable conduct in a § 1983 plaintiff's complaint.  That is exactly what was done here, and if the City had a gripe with

---

[1]  An effort is made in this *Response* to organize Dr. Wynn's objections to the City's demand for attorneys' fees more or less in a manner mirroring the City's organization of its *Motion*.  Without casting aspersions on the City's perfectly reasonable decisions about organization, this method of presenting argument, unfortunately, results in a sometimes clumsy application of facts to the law.  Further arguments and legal issues by Dr. Wynn are appended as additionally enumerated items.

the length and contents of Dr. Wynn's *Complaint*, the remedy was a motion for more definite statement, pursuant to Rule 12(e), at the beginning of the case, not a request for attorneys' fees incurred in litigating a properly-pled *Complaint* that alleges, among other things, municipal liability and inaction theories of relief.  (D.E. No. 1.)

**B.      Statements by Counsel at the Case Management Conference.**

The City, again, relies on completely irrelevant discussions had at the June 23, 2011 Initial Case Management Conference held in this case.  (Mot. Attys.' Fees, pp. 3-4, D.E. No. 182.)  The undersigned counsel reasonably believed that evidence would develop that could establish one or more claims under *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978) ("*Monell*"), including municipal inaction theories as set forth in *City of Canton v. Harris*, 489 U.S. 378 (1989) ("*City of Canton*").  Indeed, as reflected in the evidence admitted at the summary judgment proceedings in this case, and as set forth, *infra.*, Dr. Wynn and her attorneys reasonably believed that evidence existed sufficient to survive summary judgment.  That the Court disagreed, especially under the universally-acknowledged novelty of the factual global circumstances of this case, does not render Dr. Wynn's claims against the City "frivolous"; it just means that she lost.  Such a situation is not, and has never been, the basis for the extraordinary remedy of awarding a prevailing defendant attorneys' fees in a Section 1983 case.

**C.      Scope of Discovery.**

Likewise, the City's complaints about the number of depositions conducted and the amount of written discovery exchanged in this case is also irrelevant.  (Mot. Attys.' Fees, pp. 5-6, D.E. No. 183.)  If the City had an objection to the amount of discovery conducted by Dr. Wynn, it was never communicated to the undersigned counsel, and if the City now argues that a

3

basis for the payment of attorneys' fees is that Dr. Wynn conducted excessive discovery, the proper remedy would have been for the City to file a motion for a protective order, pursuant to Fed. Rs. Civ. P. 26 and 37. (Indeed, counsel for the City appears to forget that the information Dr. Wynn was entitled to in the City's Rule 26 Initial Disclosures was not provided in a timely manner, without complaint to the Court by Dr. Wynn.)

Further, it should be remembered that Dr. Wynn and her attorneys—all practitioners in small firms with fractions of the resources available to the City, its co-Defendants and their insurer—likewise had to respond to numerous sets of written discovery (including multiple sets of interrogatories and requests for production of documents from at least one defendant's attorney) from three different law firms, all of whom insisted that Dr. Wynn—who offered to stay late—alter her work schedule to accommodate their demand for the better part of another full day to complete her deposition. (Affidavit of Michael B. Schwegler, ¶ 5, attached hereto as **Ex. A**.) And to the extent that the City complains about subpoenas *duces tecum* served upon Lieutenant Joel Robison, of the City's police department, and Brandon Gibson, an attorney retained by the City to investigate the incident with Dr. Wynn, such subpoenas *duces tecum* sought plainly relevant, material evidence (the former of which, at least, should have been produced along with the City's Rule 26 Initial Disclosures, anyway), and is more than offset by the City's co-Defendant's subpoenas of Dr. Wynn's adult children's education records. The point, of course, is that if this case was really as frivolous as the City now insists, neither it nor its co-Defendants would have affirmatively engaged in so much discovery, nor propounded extensive written discovery responses, without objection. The scope of the discovery proceedings (other than billable work expended on them when Dr. Wynn's case against Officer

4

Estes eventually makes it to trial) are not, and should not, be considered in any determination of any party's liability for attorneys' fees.

**D.     Inadmissible Reliance on Compromise and Offers to Settle.**

The City urges this Court to award it attorneys' fees because Dr. Wynn made an initial settlement demand of $100,000.00, and "outrageously" increased her settlement demand at a <u>confidential</u> mediation conference held on January 17, 2012.  (Mot. Attys. Fees., pp. 3, 5, D.E. No. 183.)  This information is irrelevant and inadmissible for any purpose.  Federal Rule of Evidence 408 states, in pertinent part:

> **(a)     Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either <u>to prove or disprove the validity or amount of a disputed claim</u> or to impeach by a prior inconsistent statement or a contradiction:
>
> > **(1)**     furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > **(2)**     conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(Emphasis added.)  Here, as this *Response* makes abundantly clear, Dr. Wynn disputes both the validity and amount of the City's demand for attorneys' fees, and also disputes the propriety and recoverability of the claim, itself.  Accordingly, the City's references to settlement amounts must be ignored in their entirety.  If the Court is inclined to consider such inadmissible evidence, the City's and its co-Defendants' failure to even respond to Dr. Wynn's initial settlement demand left Dr. Wynn with no choice but to proceed with litigation.  (Affidavit of John W. Roberts, ¶ 5, attached hereto as **Ex. B**.)  Additionally, the City cannot deny that its counsel has already received full satisfaction and payment from Dr. Wynn of the $5,912.19 taxed against Dr. Wynn as recoverable costs.  (*See* Not. of Tax. Costs, D.E. No. 181.)  Further, Defendants' conduct at

5

the January 17, 2012 settlement conference is equally worthy of consideration: their initial offer of settlement for a mere $7,000.00, which was immediately reduced by the Defendants, collectively, to $1,000.00. (J.W. Roberts Affid., ¶ 7.) Accordingly, even if any of these settlement negotiations were admissible—and they are not—the fact that Dr. Wynn was forced to heavily litigate the case in response to Defendants' posturing in a case that is obviously worth more than $1,000.00 (and much more than $1,000.00 in attorneys' fees for Dr. Wynn) is simply not a basis for the City's recovery of attorneys' fees.

**E.      Revelation of Facts in Discovery Supporting a Municipal Theory of Liability.**

The City consistently argues that discovery "did not reveal any facts that supported Plaintiff's claims against the City." (*See, e.g.*, Mot. Attys.' Fees, pp. 4, 7, 8, 9, 11, D.E. No. 183.) This assertion is incorrect; the evidence presented at summary judgment was simply insufficient to overcome Rule 56. This is not a proper basis for an award of attorneys' fees to the City. Further, had the Court ruled the other way, discovery conducted in this case revealed a host of facts that may (or may not) have been admissible for the purposes of proving a municipal liability claim, and in any event, discovery undoubtedly led to plausible theories assertable against the City.

For example, at the summary judgment phase, Dr. Wynn relied on the following facts in support of her municipal liability claims: First, that Officer Estes engaged in one or deprivations of Dr. Wynn's constitutional rights. (Resp. Estes SUMF, ¶ 8, D.E. Nos. 82 & 88; Resp. City SUMF, ¶ 31, D.E. No. 84.) The Court agreed that Dr. Wynn made such a showing sufficient to present the issue to a jury. (Memo., p. 1, D.E. No. 170; Order, p. 1, D.E. No. 171.)

Second, that the City's municipal custom, practice, policy or procedure was deliberately indifferent to Dr. Wynn's rights and was the proximate cause of the deprivation. Here, Dr.

6

Wynn pointed out evidence demonstrating the existence of the City's expectation that each officer accomplish 10 "traffic or custodial arrest charges" per month as a work performance goal. (Resp. City SUMF, ¶ 20, D.E. No. 84.)  Similarly, Dr. Wynn argued that the training provided to Officer Estes and other City police officers was deficient because they could not even identify the statutory "rules of the road" applicable to emergency and other vehicles.  (Pltfs. Add'l UMF, ¶ 17, D.E. No. 85.)   Indeed, Dr. Wynn asserted that the City's training defects were also demonstrated by additional training required following the incident with Dr. Wynn, which such training may have fallen under the Fed. R. Evid. 407 exception that subsequent remedial measures may be admitted "for another purpose," such as demonstrating the feasibility and need for additional police training.  (*Id* . at ¶ 18.)  Further, the City's response to excessive force used by Officer Estes addressed in the *Hollis v. Estes*, 2011 U.S. Dist. LEXIS 9326, *30 (M.D. Tenn. Jan. 31, 2011), case, was also a fact asserted by Dr. Wynn in support of her municipal liability claims.  (*Id* . at ¶ 16.)  These facts, when viewed collectively, while setting forth novel theories of relief in a case with few, if any, factually similar precedents, do not constitute the type of complete inadequacy of proof that rendered Dr. Wynn's municipal liability claim knowingly unactionable.

Further, had the Court allowed one or more of Dr. Wynn's § 1983 claims against the City to survive Rule 56, the following evidentiary issues—developed through discovery, despite the City's argument that discovery yielded zero possible evidence of municipal misconduct—would also have been presented at trial for further determination as to admissibility:  Another incident involving misconduct by Chad Estes, wherein he abused his privileges as a police officer and deliberately showed off by speeding past other City police officers.  (Deposition of Chad Estes, Ex. 12, attached hereto as **Ex. C**.)   Officer Estes's misuse of his position as an officer in

harassing an ex-girlfriend's new beau and violating an instruction to stay away from the young woman. (C. Estes Depo., Exs. 9, 11 and 13, collectively attached hereto as **Ex. D**.) Officer Estes's false representation that he served process on Dr. Wynn when, in fact, the initial charging instrument was not served upon her. Such facts would have been relevant to a showing that the City had erred by failing to discipline or fire Officer Estes after his first use of excessive force. Too, Officer Estes's assault upon a fellow officer, after which Officer Estes resigned from the City's police force, may have been admissible for the same purpose. (C. Estes Depo., Ex. 14, attached hereto as **Ex. E**.)

Another expert for the defense, Robert Allen ("Mr. Allen"), testified that had the baby (which Dr. Wynn was rushing to the hospital) been injured, his opinion as to the Defendants' conduct may be different. (Deposition of Robert Allen, 19:15-21:8, attached hereto as **Ex. F**.) This last piece of evidence—which could only have been properly developed on cross-examination, and therefore was not included as affirmative proof at the summary judgment phase—is particularly telling, because every City official testified that Officer Estes did nothing wrong, despite the undeniable fact that he was suspended for 30 days and received an additional 30 days' administrative leave. That is, if a jury disagreed with Mr. Allen and resolved that Chad Estes violated Dr. Wynn's Fourth Amendment right or rights, yet the City officials expressly approved of Officer Estes's conduct, a triable issue would emerge as to whether a City custom, practice, policy or procedure was instead the motivating factor in causing Officer Estes's conduct. Such a legal and evidentiary process was certainly plausible, and these circumstances were all—again, despite the City's protestations to the contrary—developed during discovery. That Dr. Wynn was unable to survive summary judgment in order to advance these theories at trial is simply not an egregious case of misconduct.

**F.      Reliance on Communications from Opposing Counsel.**

Letters between counsel articulating the litigants' positions is not proof of anything, much less proof of a prevailing § 1983 defendant's entitlement to attorneys' fees. (Mot. Attys.' Fees, pp. 7-8, D.E. No. 183.) The related assertion that Dr. Wynn's decision to forego the expense of retaining expert witnesses is similarly defective, because proof from a police expert was not a necessary element of Dr. Wynn's claims in this case. (*Id.*)

The importance of opposing counsel's communications with the undersigned is revealing, however, for an entirely different reason: its repeated reliance on conditional language acknowledging that Dr. Wynn's municipal liability claims may have survived summary judgment. Indeed, in its *Motion*, the City inherently concedes the plausibility of Dr. Wynn's claims by noting that, "Plaintiff would <u>most likely</u> not succeed," and that "'<u>if</u> I prevail'" on the City's *Motion for Summary Judgment*. (Mot. Attys.' Fees, pp. 7-8, D.E. No. 183.) The obvious implication is that even counsel for the City recognized the possibility that Dr. Wynn's claims against the City would survive to trial; as described, *infra.*, if a plaintiff's § 1983 claim is plausible or even arguable, it is not "frivolous, unreasonable or without foundation."

**LAW AND ARGUMENT**

**I.**
**PREVAILING PARTY**

Dr. Wynn agrees with the City for the purposes of its *Motion*, that the City is a "prevailing defendant" pursuant to Dr. Wynn's § 1983 municipal liability claims against the City. (Mot. Attys. Fees., pp. 9-10, D.E. 183.) However, as set forth more fully in the argument, *infra.*, Dr. Wynn disagrees that the City is a "prevailing defendant" for the purposes of 42 U.S.C. § 1988 ("Section 1988" or "§ 1988") because the City cannot demonstrate that Dr. Wynn's claims against the City can be frivolous, unreasonable, or without foundation. (*Id.*)

9

The cases overwhelmingly disfavor an award of attorneys' fees to a prevailing civil rights

defendant.  It is beyond doubt that Section 1988 authorizes a prevailing party in civil rights

litigation to recover reasonable attorneys' fees.  Section 1988 reads, in pertinent part:

> (b)      Attorney's fees. In any action or proceeding to enforce a provision of …
> [42 U.S.C. § 1983] … the court, in its discretion, may allow the prevailing party,
> other than the United States, a reasonable attorney's fee as part of the costs,
> except that in any action brought against a judicial officer for an act or omission
> taken in such officer's judicial capacity such officer shall not be held liable for
> any costs, including attorney's fees, unless such action was clearly in excess of
> such officer's jurisdiction.

District courts in the Sixth Circuit only award attorneys' fees to prevailing defendants,

pursuant to Section 1988, "'upon a finding that the plaintiff's action was frivolous, unreasonable,

or without foundation.'"  *Lowery v. Jefferson County Bd. of Educ*., 586 F.3d 427, 437 (6th Cir.

2009) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1980)).  Such attorneys'

fees are awarded at the trial court's discretion.  *Id*.  However, "'<u>[a]n award of attorney's fees

against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to

truly egregious cases of misconduct</u>.'"  *Id*. (citing *Jones v. Continental Corp*., 789 F.2d 1225,

1232 (6th Cir. 1986)) (emphasis added).  This principle accords with the Supreme Court's

admonition that "prevailing defendants are entitled to attorneys['] fees much less frequently"

than are prevailing plaintiffs.  *Smith v. Smythe-Cramer Co*., 754 F.2d 180, 182 (6th Cir. 1985)

(citing *Christiansburg Garment Co*., 434 U.S. at 417-18)); *see Hughes v. Rowe*, 449 U.S. 5

(1980) (mere fact that allegations of plaintiff in action brought under Section 1983 prove legally

insufficient to require trial are not, for that reason alone, "groundless" or "without foundation").

Sixth Circuit courts are, therefore, reluctant to award attorneys' fees to prevailing civil

rights defendants, and the Sixth Circuit itself, has "not hesitated to reverse such awards in the

past." *Lowery*. 586 F.3d at 437; *see, e.g., Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 300 (6th Cir. 2008); *Revis v. Meldrum*, 489 F.3d 273, 293 (6th Cir. 2007); *Lisle v. Met. Gov't of Nashville & Davidson County*, 73 F. App'x 782, 791 (6th Cir. 2003); *Tahfs v. Proctor*, 316 F. 3d 584, 596 (6th Cir. 2003); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 755 (6th Cir. 2002); *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001); *see also Salkil v. Mt. Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006) (reversing under same standard of review for 28 U.S.C. § 1927); *Danese v. Roseville*, 757 F. Supp. 827 (E.D. Mich. 1991) (court denied city's motion for attorneys' fees against plaintiff relatives after summary judgment was entered in favor of the city in civil rights action); *cf. O'Neal v De Kalb County*, 850 F2d 653 (11th Cir. 1988) (attorneys' fees for defendants were properly denied, where although plaintiff was not awarded relief, cause of action was plausible, and after review of case law, no case was found with fact situation similar to one at hand); *Bond v Keck*, 629 F. Supp. 225 (E.D. Mo. 1986) (award of fees to prevailing defendant is intended to deter filing of frivolous or groundless civil rights suits, not make defendant whole) (emphasis added).

### III.
### DR. WYNN'S CLAIMS AGAINST THE CITY WERE NOT EGREGIOUS OR EXCESSIVE CASES OF MISCONDUCT, AND WERE NOT FRIVOLOUS, UNREASONABLE OR WITHOUT FOUNDATION

**A.     Dr. Wynn's Claims were not Egregious from the Outset.**

As a preliminary matter, the City consistently argues that "from the outset Plaintiff's claims against [the City] were frivolous and completely unfounded." (Mot. Attys.' Fees, p. 10, D.E. No. 183.) However, Dr. Wynn, at the commencement of this litigation, knew that both Officer Estes and Sergeant Young had been suspended as a result on the incident involving her; knew of Officer Estes's involvement in a prior civil rights suit, was the victim of conduct that this Court subsequently determined was actionable against Officer Estes in his personal capacity,

11

and knew that the City had conducted additional training for its personnel following Officer Estes's attempted arrest. Further, Dr. Wynn's initial settlement demand elicited no response or counteroffer from the City, although she did cooperate with permitting the City to gather medical records and other relevant materials. (J.W. Roberts Affid., ¶ 9.) None of these facts are disputed and, accordingly, her claims were not egregious cases of misconduct from the date she filed her *Complaint*. Finally, in one case supporting Dr. Wynn's position, *Buchanan v. Sumner County Board of Education*, this Court held that prevailing defendants were not entitled to attorneys' fees even when a § 1983 plaintiff failed to respond to a summary judgment motion. 2012 U.S. Dist. LEXIS 37295, *1-*3 (M.D. Tenn. Mar. 20, 2012). Citing *Christiansburg*, 434 U.S. at 421-22, this Court explained that a plaintiff who has who has even an "arguable basis" for bringing her civil rights claims does not present an action which is unreasonable or without foundation. *Buchanan*, 2012 U.S. Dist. LEXIS 37295 at *3; *see Smith*, 754 F.2d at 183-84 (the Sixth Circuit will "reverse the award of attorney fees when … plaintiff had an arguable basis for pursuing his or her claim") (citations omitted).

The City's *Motion* should therefore be denied.

**B.     Dr. Wynn's Continued Litigation of Her Claims was Not and Never Became "Baseless."**

The City's primary argument appears to be that following the end of factual discovery, Dr. Wynn should have terminated her litigation of claims against the City because it was undeniably clear that there was no possibility of success, pursuant to a rule set forth in *Smith*, 754 F.2d at 183. (Mot. Attys.' Fees, pp. 11-13, D.E. No. 183.) However, here, as before, Dr. Wynn had, at a minimum, an arguable basis for pursuing her plausible claims, and the City simply ignores a threshold principle governing the award of attorneys' fees to prevailing civil rights defendants: "defendants are not entitled to attorneys' fees simply because, as is often the

case, discovery and related summary judgment briefing reveals that the defendants had no liability." *Oshop v. Rutherford County Bd. Of Educ.*, 2010 U.S. Dist. LEXIS 61040, *17 (M.D. Tenn., June 21, 2010). In *Oshop*, *id*. at *13-*18, prevailing defendants—including a municipal entity—were denied attorneys' fees when the plaintiffs at their depositions were unable to articulate factual issues and legal analyses that would permit their case to proceed past summary judgment, but experienced conduct which rightly bothered them as parents, and were concerned by a potential violation of their fundamental rights.

Here, as the Court expressly acknowledged, Officer Estes's conduct was such that Dr. Wynn is entitled to present her case to a jury to determine if her Fourth Amendment rights—including her fundamental right to be free from arbitrary invasions, such as an unreasonable arrest—were violated, and as in *Oshop*, *id*., the fact that her municipal liability claims failed following her own inability to testify as to factual and legal bases of relief and opposing counsel's vituperative warnings is proof of nothing other than that she lost her case. (Mot. Attys.' Fees, pp. 1-13, D.E. No. 183.)

The City's reliance on "*Cheatham v. Knox County*[2], 2012 U.S. Dist. LEXIS 183828 (U.S.D.C., E.D. Tenn. Nov. 19, 2012), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 1796 (E.D. Tenn. Jan. 7, 2013)," is wholly misplaced. (Mot Attys.' Fees, p. 12, D.E. No. 183.) First, in *Cheatham*, a Magistrate Judge issued a Report and Recommendation, 2012 U.S. Dist. LEXIS 183828 (U.S.D.C., E.D. Tenn. Nov. 19, 2012), suggesting that an individual-capacity defendant who benefitted from an audio recording—a fact notably absent from the case *sub judice*—evidencing plaintiff's "crying and screaming" prior to being touched—unlike here—who was entitled to judgment as a matter of law—also notably absent in Dr. Wynn's case—was

---

[2]  As described, *infra.*, the City's citations to the record in *Cheatham* do not properly describe the case's sequence of events, the status of the case, or, in part, its holding.

also entitled to attorneys' fees. 2013 U.S. Dist. LEXIS 1796 (E.D. Tenn. Jan. 7, 2013.)[3] Second, the actual relevant holding in *Cheatham* is that a municipality was not entitled to recover attorneys' fees under § 1988 as a prevailing plaintiff when the municipality is dismissed by stipulation during the pendency of its motion for summary judgment. 2012 U.S. Dist. LEXIS 183826 (E.D. Tenn. Nov. 14, 2012), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 1796 (E.D. Tenn. Jan. 7, 2013).

*Royal Oak Entertainment, L.L.C. v. City of Royal Oak*, 316 F. App'x 482, 487 (6th Cir. 2009)[4], is also inapposite. (Mot Attys.' Fees, p. 12, D.E. No. 183.) *Royal Oak Entertainment* is distinguishable in the first degree because, unlike here, tall of the plaintiffs' claims were dismissed, whereas only some of Dr. Wynn's claims have been dismissed. *Royal Oak Entm't*, 316 F. App'x at 485; (Mot. Attys.' Fees, p. 12, D.E. No. 183.) The case is further—and crucially—distinguishable from the instant one because, although the initial dispositive motion was treated as a summary judgment motion, it was initially filed as a Rule 12 motion, and the trial and appellate courts ruled that the contents of the motion to dismiss (prior to its conversion to a Rule 56 motion) placed plaintiffs on notice that their federal claims were non-existent, that they had no standing to sue, and that they could not state a claim without identifying a protected liberty or property interest. *Royal Oak Entm't*, 316 F. App'x at 486. That is a much different situation from the one at bar: no defendant has ever filed a Rule 12 motion; no defendant has ever disputed the legal existence of Dr. Wynn's federal claims; there is no dispute that Dr. Wynn sufficiently pled a protected liberty interest; and no defendant has ever asserted that Dr. Wynn

---

[3]  A review of the Eastern District's PACER system on March 26, 2013 reveals that on January 7, 2013, contrary to the City's erroneous citation, the U.S. District Court for the Eastern District of Tennessee actually entered an Order granting in part and denying in part the individual-capacity defendant's motion for attorneys' fees, and followed up with a February 22, 2013 Order authorizing the amount of attorneys' fees.

[4]  Dr. Wynn notes that *Royal Oaks Entertainm*ent is "not recommended for full-text publication," although the note appearing on the first page makes a cryptic reference to 6 Cir. R. 28(g), perhaps under the 2009 version of the Sixth Circuit Rules..

14

lacks standing. Instead, the municipal liability issues in this case were and always have been factual—whether Dr. Wynn would be able to set forth sufficient evidence to survive Rule 56— which is a far cry from the City's misunderstanding of *Royal Oaks Entertainment*'s core holding that a plaintiff and attorney who allege non-existent causes of action under 42 U.S.C. §§ 1983, 1985 and 1986, and RICO can be sanctioned with the extreme remedy of a civil rights defendant's attorneys' fees. *Id*. at 486-87.

Instead, the Court should rely on the facts and holdings of cases that actually address the factual circumstances presented herein. For example, in *Lowery*, defendants prevailed at a trial in a viewpoint discrimination case, failed to challenge the *legal* sufficiency of plaintiffs' case at the pleadings stage with a Rule 12 motion, and then sought attorneys' fees. 586 F.3d at 438-439. The Sixth Circuit reversed the trial court's award of attorneys' fees to the defendants, pointing out that doing so would, "run the risk of chilling individuals from protecting their constitutional rights." *Id*. Similarly, in *Lisle v. Metropolitan Government of Nashville and Davidson County*, the Sixth Circuit applied the principle that civil rights claims drifting at least into the "realm of the possible," though subsequently dismissed, should not be the basis of an award for attorneys' fees to the prevailing defendants. 73 Fed.Appx. at 792. At worst, Dr. Wynn's municipal liability claims against the City in this case fell into the "realm of the possible," a circumstance expressly acknowledged by the City's counsel in its *Motion*: "Plaintiff would <u>most likely</u> not succeed," "'<u>if</u> I prevail,'" etc. (Mot. Attys.' Fees, pp. 7-8, D.E. No. 183.)

Accordingly, the City's *Motion for Attorneys' Fees* (D.E. No. 183) should be denied.

15

# IV.
## DEFENDANTS' REPRESENTATIONS ABOUT INSURANCE COVERAGE FOR OFFICER ESTES'S FOURTH AMENDMENT VIOLATIONS

The following argument is one that the undersigned are a little apprehensive to bring up for reasons of professional civility and respect for the forthright manner in which opposing counsel have conducted this litigation, but the strategic and tactical implications of certain oral and written implications—and following the Court's ruling on the Defendants' *Motions for Summary Judgment*, flat-out assertions—of opposing counsel in this case must be mentioned in any discussion of Dr. Wynn's decision to continue prosecuting her municipal liability claims against the City following the close of discovery. The following circumstances are certainly not dispositive of anything, but do deserve to be placed before the Court in support of Dr. Wynn's situation, as well as every other similarly situated § 1983 plaintiff alleging Fourth Amendment violations against individual-capacity and municipal insureds.

During discovery, counsel for Officer Estes repeatedly implied (and on February 16, 2012, expressly stated in an e-mail to the undersigned) that Officer Estes would not be entitled to coverage for indemnification or liability under the terms of the City's liability policy with the Tennessee Municipal League's Risk Management Pool ("TML").[5] (M.B. Schwegler Affid., ¶ 6.) (This warning did not, as is customary, come from separately retained coverage counsel, although the undersigned do not, at this time, wish to bring into issue the propriety of litigation counsel making such representations.)[6] At the same time, as the City asserts in its *Motion*,

---

[5] The undersigned has reviewed the copy of the insurance policy at issue, propounded by the City (albeit untimely), pursuant to Fed. R. Civ. P. 26. Upon information and belief, TML does not consider itself a traditional insurance company subject to the regulatory standards imposed upon it by state insurance statutes, *see, e.g.*, Title 56 of the Tennessee Code Annotated, and the Tennessee Department of Commerce and Insurance ("TDIC"), but rather a municipal risk pool authorized under Tenn. Code Ann. § 29-20-401, *et seq*.

[6] After the Court's ruling on the Defendants' various *Motions for Summary Judgment* (Memo., D.E. No. 170; Order, D.E. No. 171), these insinuations were expressly confirmed with communications from Officer Estes's counsel inviting Dr. Wynn to voluntarily dismiss her claim against Estes, because TML, as policy, does not afford

16

counsel for the City was strongly hinting that he would seek attorneys' fees in the event that Dr. Wynn's municipal liability claims against the City did not survive summary judgment. (M.B. Schwegler Affid., ¶ 7; J.W. Roberts Affid., ¶ 10.)

The implication of these suggestions was that Dr. Wynn—and every other plaintiff seeking to vindicate violations of Fourth Amendment rights by TML insureds'—has two routes to recover for such constitutional deprivations: (1) proceed solely against a purportedly judgment-proof individual-capacity defendant, and then in the event of a successful jury verdict, purchase the allegedly uninsured personal-capacity defendant's claim and separately sue TML in a declaratory judgment action; or (2) also take a swing and attempt to make out colorable municipal liability claims against municipalities (who are undeniably covered for such municipal liability claims), but do so using the admittedly high hurdles applicable to *Monell* and *City of Canton* claims, and further do so with the knowledge that the municipal defendant will likely elect to try to recover its attorneys' fees. This Catch-22[7] is the situation that Dr. Wynn and every other plaintiff (regardless of his, her or its resources) faces in Fourth Amendment litigation against TML insureds, and presents a situation where TML has effectively figured out a way to force Tennessee plaintiffs into foregoing valid claims against municipal entities and avoid, in most cases, paying out liability payments to citizens who suffer deprivations. This situation should not be permitted, and the Court should take this opportunity to curtail civil rights defendants from relying on the threat of coverage denials and applications for attorneys' fees to (a) prevent legitimate plaintiffs from presenting such claims to the courts to be adjudicated, and

---

indemnification or liability coverage to individual-capacity defendants found liable for Fourth Amendment excessive force claims, rendering Officer Estes judgment proof. (M.B. Schwegler Affid., ¶ 8.) Dr. Wynn, of course, declined this offer.

[7] Which benefit, of course, inures to TML and which is not available to its commercial insurance company competitors, as they cannot rely on blanket denials of indemnification coverage absent an application of the facts of the allegedly insured event to the language in the TDCI-approved policy of insurance.

(b) deny covered individual-capacity insureds (who are functionally consumers or, at a minimum, employees subject to commercial liability coverage standards) coverage absent a separate declaratory judgment proceeding. Indeed, this Court has recognized that "conscientious and reasonable challenges to alleged violations of [fundamental rights] should not be discouraged by the courts simply because discovery and summary judgment briefing revealed those challenges to be ultimately without merit." *Oshop*, 2010 U.S. Dist. LEXIS 61040 at *17. In this case, as in *Oshop*, awarding the City "the substantial attorneys' fees requested here would certainly discourage future reasonable civil rights litigation." *Id.*

For the foregoing reasons, the City's *Motion for Attorneys' Fees* (D.E. No. 183) should be denied.

## V.
## BIFURCATION OF LIABILITY FOR AND AMOUNT OF ATTORNEYS' FEES SOUGHT, AND PROPRIETY OF AMOUNT OF ATTORNEYS' FEES SOUGHT BY THE CITY

### A.     The Issues of Dr. Wynn's Liability for and the Amount of the City's Purported Attorneys' Fees Should be Bifurcated.

Pursuant to Fed. R. Civ. P. 54(d)(2)(C) ("[t]he court may decide issues of liability for fees before receiving submissions on the value of services"), Dr. Wynn submits that the issue of her liability for the attorneys' fees incurred by the City since July 13, 2012 should be first adjudicated before the amount of any such award is considered. Although there does not appear to be any Sixth Circuit case law directly on point in the civil rights context, this approach has been endorsed by other federal courts in other scenarios. *See, e.g.*, *American Home Assurance Company v. Pope*, 410 F. Supp. 2d 849, 850 (W.D. Mo. Jan. 23, 2006). This approach certainly makes the most sense in the instant case.

18

**B.     The City's Purported Attorneys' Fees are Unreasonable, Excessive, Unwarranted and Unjust Under the Circumstances.**

Alternatively, Dr. Wynn objects to the calculation and documentation of attorneys' fees incurred by the City since July 13, 2013 as unreasonable, excessive, unwarranted and unjust under the circumstances.  An even modest review of the Middle District's PACER system[8] reveals that opposing counsel, Robert M. Burns ("Mr. Burns") has represented municipal entities in not less than 35 cases in the Middle District of Tennessee since approximately 1992. However, as he concedes in his *Affidavit*, Mr. Burns has not submitted copies of his attorney fee statements, but rather relies on five overbroad, undefineable summaries purporting to demonstrate the amount of time he and his associates have spent on the above styled case since July 13, 2013.  (Affidavit of Robert M. Burns, ¶¶ 17-18, D.E. No. 184-4.)  In one such time entry, 78.0 associate billing hours are assigned the vague task of "Dispositive Motion:  Research, prepare, and fully brief the City's Motion to Dismiss and for Summary Judgment, including researching and drafting Reply and Objections."  (*Id*.)  Given the obvious fact that Mr. Burns has accumulated at least 35 cases' worth of pleadings, motions, memoranda and other court filings generated in representing municipal defendants, it is difficult—applying either an objective or subjective perspective—to see how an associate can incur almost two full work weeks (78.0 hours) preparing dispositive motion materials that almost certainly lean heavily on previously drafted documents.  (*Id*.)  With respect to the same "block billing" time entry, the City's attorneys billed a total of 90.6 hours in connection with the preparation of summary judgment materials.  Indeed, the gravamen of the City's *Motion* must, as a matter of law, be that Dr.

---

[8]  Search conducted on March 27, 2013.

Wynn's municipal liability claims are so frivolous[9] and deficient on their face in the light of the evidence that the allegation and prosecution of them are egregious or excessive cases of misconduct. (Mot. Attys. Fees, pp. 1-13, D.E. No. 183.) If that were the case, it is difficult to understand how any attorney(s), of whatever experience and with access to whatever database of previous court filings, can generate 78.0 or 90.6 billable hours defending such an allegedly unsupportable claim. (Affidavit of Robert M. Burns, ¶¶ 17-18, D.E. No. 184-4.) Similarly, the aggregate total of 51.1 billable hours for the preparation of *liminie* motions and responses thereto and other pre-trial documents is simply unreasonable and excessive. (*Id*.) Likewise, the aggregate total of 16.0 billable hours for the mere preparation of the City's Bill of Costs and *Motion for Attorneys' Fees* is, likewise, unsupportable based on the "block billing" summaries submitted by the City. (*Id*.) Further, the generic time entry for "General Case Management and Correspondence" is unreasonably vague, when counsel intends to recover not less than $1,345.90 for this nonspecific, non-billable activity. (*Id.*) What is more, an aggregate 20.9 hours billed—without an appropriate breakdown of time entries—for expert witness discovery for an expert whose deposition lasted less than two hours is unreasonable, excessive, unwarranted and unjust under the circumstances of this case (*Id*.)

In the event the Court is not inclined to deny the City's purported attorneys' fees as insufficiently documented, unreasonable, excessive, unwarranted and unjust under the circumstances set forth, *supra*., Dr. Wynn should be afforded the opportunity to review more detailed billing records, or a more detailed summary of the City's billable hour entries incurred since July 13, 2012, to object to specific line item fees allegedly incurred by the City, and should be presented with evidence of any courtesy reductions received by the City from its attorneys.

---

[9] The definition of "frivolous," is: "lacking a legal basis or legal merit; not serious; not reasonably purposeful." Black's Law Dictionary 739 (9th ed. 2009).

Therefore, the City's *Motion* should be denied. (Mot. Attys.' Fees, pp. 1-13, D.E. No. 183.)

## VI.
## REQUEST FOR HEARING

Pursuant to Fed. R. Civ. P. 54(d)(2)(C) ("… the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78") and LR 54.01(b)(3) ("[e]ither party may request an oral hearing in the motion and objections"), Dr. Wynn hereby requests an oral hearing to address the City's *Motion* and this *Response* thereto. (Mot. Attys.' Fees, pp. 1-13, D.E. No. 183.)

## <u>CONCLUSION</u>

For the foregoing reasons, the City's *Motion* should be denied.

21

Respectfully submitted,

**ERNEST B. WILLIAMS IV, PLLC**

/s/Michael B. Schwegler
**ERNEST B. WILLIAMS, IV, BPR # 12301**
**MICHAEL B. SCHWEGLER, BPR #22563**
P.O. Box 159264
Nashville, Tennessee 37215
Telephone: (615) 372-0993
Facsimile: 615) 371-1572
Email:    erniewilliams@ewivlaw.com
              mikeschwegler@ewivlaw.com

**THE ROBERTS LAW GROUP, PLLC**

/s/John W. Roberts
**JOHN W. ROBERTS, BPR # 24679**
**W. JOSEPH WERNER, JR., BPR # 26975**
1720 West End Avenue
Suite 402
Nashville, Tennessee 37203
Telephone: (615) 242-1001
Email:    jroberts@jwrobertslaw.com

**Attorneys for Terry Wynn, M.D.**

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that a true and correct copy of the foregoing was served, via the United States District Court for the Middle District of Tennessee's Electronic Case Filing/Case Management system to all parties indicated on the electronic filing receipt, as set forth below:

Robert M. Burns
Megan E. Mitchler
Howell & Fisher, PLLC
Court Square Building
300 James Robertson Parkway
Nashville, Tennessee 37201-1107

Teresa Reall Ricks
Farrar & Bates, LLP
211 Seventh Avenue
Suite 500
Nashville, Tennessee 37219

John W. Roberts
Roberts & Wicker, PLLC
1720 West End Avenue
Suite 402
Nashville, Tennessee 37203

On this, the 27th day of March, 2012.

            /s/Michael B. Schwegler_____
            **MICHAEL B. SCHWEGLER**